**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Derek L. Horstemeyer,<br><br>                                        Debtor. | C/A No. 14-04773-DD<br><br>Adv. Pro. No. 15-80003-DD<br><br>Chapter 7 |
| Derek L. Horstemeyer,<br><br>                                        Plaintiff,<br><br>v.<br><br>Internal Revenue Service,<br><br>                                        Defendant. | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

This matter is before the Court on a motion for summary judgment filed by plaintiff Derek L. Horstemeyer ("Plaintiff") [Docket No. 52] and a motion for partial summary judgment filed by defendant Internal Revenue Service ("Defendant") [Docket No. 64]. Responses to the motions were filed by each party on May 19, 2016 [Docket Nos. 72, 74]. Replies were filed on June 2, 2016 [Docket Nos. 75, 99]. A hearing was held on the motions on June 21, 2016. For the reasons set forth below, the Court denies both motions.

### I.    Undisputed Facts and Procedural History

1. Plaintiff is a licensed anesthesiologist who performs cardiothoracic services.

2. In December 2000, Plaintiff incorporated Derek L. Horstemeyer, MD, PA ("MDPA").

3. In December 2003, Plaintiff incorporated HLN & Associates, Inc. ("HLN").

4. In 2009, Defendant audited the tax returns for Plaintiff and his wife, MDPA, and HLN for the tax years 2005 and 2006. Subsequently, Defendant issued Notices of Deficiency to Plaintiff and his wife, MDPA, and HLN for the tax years 2005 and 2006.

5. In November 2009, Plaintiff and his wife, MDPA, and HLN all filed petitions for redetermination of the deficiencies for the tax years 2005 and 2006 in the Tax Court.

6. Defendant then issued Notices of Deficiency for Plaintiff and his wife and MDPA for the tax years 2007 and 2008.

7. In May 2011, Plaintiff and his wife and MDPA filed additional petitions for redetermination of the deficiencies for the tax years 2007 and 2008 in the Tax Court.

8. All five Tax Court cases were consolidated (the "Tax Court Litigation").

9. The parties negotiated settlements in the Tax Court Litigation. In January 2012, the Tax Court entered orders determining the tax liabilities for Plaintiff, HLN, and MDPA for the relevant tax years.

10. HLN ceased operating in 2007.

11. MDPA ceased operating and filed Articles of Dissolution in 2013.

12. In July 2014, Defendant filed multiple levies against Plaintiff and entities in which he had an interest, seeking to collect the taxes still owed by HLN and MDPA from Plaintiff as the alter ego of those entities. Defendant filed additional levies on two pension accounts of Plaintiff in September 2015 under the same theory.

13. Plaintiff filed his chapter 7 bankruptcy case on August 24, 2014 and received his discharge on December 16, 2014.

14. This adversary proceeding was commenced on January 14, 2015. Plaintiff seeks a determination that any personal liability Plaintiff may have for the taxes of HLN and MDPA was discharged.

15. Defendant continues to assert a claim against Plaintiff for income taxes owed by MPDA for tax years 2001 through 2008, and by HLN for tax years 2005 and 2006.

16.     The parties filed a Joint Stipulation on June 16, 2016, which set forth the relevant undisputed and disputed facts as to both motions.[1]  The Joint Stipulation also contains references to the exhibits that each party contends support their motions.

## II.    Summary of the Arguments

Plaintiff's motion relies on several doctrines that he asserts support his contention that Defendant is barred from asserting Plaintiff is the alter ego of MDPA and HLN: (1) the duty of consistency doctrine, (2) res judicata, (3) collateral estoppel, and (4) judicial estoppel.  Plaintiff asserts that South Carolina law, not federal law, applies as to the alter ego analysis and that Defendant cannot assert an alter ego theory because it is not entitled to equitable relief as a result of an inconsistent position taken in the Tax Court Litigation.

Defendant's Response to Plaintiff's Motion is that the Tax Court never had jurisdiction to decide the alter ego issue but that the Tax Court's jurisdiction was limited to determining the corporate liabilities of MDPA and HLN and the individual liability of Plaintiff.  Defendant asserts that it is not barred under any of Plaintiff's theories from asserting an alter ego claim because it did not assert an alter ego theory in the Tax Court Litigation.

Defendant seeks partial summary judgment on its alter ego theory.  Defendant argues that federal law, not state law, controls the alter ego determination and that, regardless of which law controls, it is entitled to a finding that Plaintiff was the alter ego of MDPA and HLN.

Plaintiff asks that his motion be considered before Defendant's because, if Plaintiff's motion is granted, the Court will not need to reach the fact-intensive alter ego theory. Additionally, Plaintiff argues that Defendant has not met the summary judgment standard.  Plaintiff asserts that genuine issues of material fact exist.  Plaintiff argues that South Carolina law, not federal law

---

[1] The undisputed facts listed in this Order are taken from the parties' Joint Stipulation.

applies, and that under South Carolina law, Defendant has not established that it is entitled to summary judgment.

### III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial responsibility of informing this Court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This initial burden requires that the moving party identify those portions of the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Though the moving party bears this initial responsibility, the nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed R. Civ. P. 56(e). In satisfying this burden, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine dispute of material fact exists, *Anderson*, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Courts must view the facts on a motion for summary judgment "'in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Summary judgment

4

is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

### IV. Discussion

1. <u>Plaintiff's Motion for Summary Judgment</u>

"The duty of consistency [or consistency doctrine], sometimes referred to as quasi-estoppel, is an equitable doctrine that Federal courts historically have applied in appropriate cases to prevent unfair tax gamesmanship." *Baldwin v. Comm'r*, 83 T.C.M. (CCH) 1915, 2002 WL 1377741, at *16 (2002) (citing various cases). The doctrine, derived from *R.H. Stearns Co. v. United States,* 291 U.S. 54, 54 S. Ct. 325, 78 L. Ed. 647 (1934), "is based on the theory that the taxpayer owes the Commissioner the duty to be consistent in the tax treatment of items and will not be permitted to benefit from the taxpayer's own prior error or omission." *Cluck v. Comm'r*, 105 T.C. 324, 331 (1995) (citing *LeFever v. Comm'r,* 103 T.C. 525, 541 (1994)). It "prevents a taxpayer from taking one position one year and a contrary position in a later year after the limitations period has run for the first year. A taxpayer gaining governmental benefits on the basis of a representation or an asserted position is thereafter estopped from taking a contrary position in an effort to avoid taxes." *Id.* (citing *LeFever*, 103 T.C. at 541-42). In practice, the consistency doctrine "prevents a taxpayer from claiming that he or she should have paid more tax before and so avoiding the present tax." *Estate of Letts v. Comm'r*, 109 T.C. 290, 296, 1997 WL 727721 (1997).

The duty of consistency is an affirmative defense and the party asserting it – typically the IRS – bears the burden of establishing the facts. *See Cluck*, 105 T.C. at 340 n.11; *Arberg v. Comm'r*, 94 T.C.M. (CCH) 215, 2007 WL 2416230 at *10 (T.C. 2007) ("Respondent, however,

must shoulder the burden of showing applicability of the duty of consistency to the extent that respondent seeks to rely on the doctrine to prevent petitioners from taking a position contrary to one maintained in a prior year."); Tax Ct. R. 142.  The duty of consistency arises when the following elements are present:

> (1) the taxpayer has made a representation or reported an item for tax purposes in one year,
> (2) the Commissioner has acquiesced in or relied on that fact for that year, and
> (3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial year.

*Lecompte v. Comm'r*, 109 T.C.M. (CCH) 1198, 2015 WL 1055081 at *6 (T.C. 2015) (quoting *Beltzer v. United States*, 495 F2d 211, 212 (8th Cir. 1974)); *Eagan v. United States*, 80 F.3d 13, 17 (1st Cir. 1996) (quoting *Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988)).  If these elements are met, "'the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary.'" *Eagan*, 80 F.3d at 17 (quoting *Herrington*, 854 F.2d at 758).  However, the consistency doctrine does not apply "to pure questions of law, as opposed to questions of fact and mixed questions of fact and law." *Lecompte*, 2015 WL 1055081, at *6 (citing various cases).

The Fourth Circuit has not addressed whether the duty of consistency applies to positions taken by the IRS.  "Despite the abundance of litigation, there is no settled rule regarding IRS inconsistency." Steve R. Johnson, *An IRS Duty of Consistency: The Failure of Common Law Making and A Proposed Legislative Solution*, 77 TENN. L. REV. 563, 569 (2010).  Plaintiff cites two cases from the Fifth Circuit to support his contention that the duty of consistency applies to Defendant.  In the first case, *Alamo Nat'l Bank of San Antonio v. Comm'r*, 95 F.2d 622 (5th Cir. 1938), the taxpayers owned a bottling company that acquired an exclusive franchise to bottle Coca-Cola in certain areas of Texas. *Id.* at 622.  The taxpayers dissolved their company and failed to

include their exclusive franchise as an asset when computing their income upon liquidation. The business was continued by the taxpayers until approximately 10 years later when they sold it. At that time, the taxpayers included the basis of the franchise in the cost basis of the business. *Id.* The Fifth Circuit held that that the taxpayers could not use the franchise basis, reasoning that "[i]n income taxation what is done in one year is sometimes projected into another where the same fact must govern. There being continuity, there ought to be consistency in treatment." *Id.* at 623. Although this case involved inconsistency claimed by the taxpayers, the Fifth Circuit went on to state that "[t]he reverse principle is also true if the Commissioner, in reviewing the return, should correct the first valuation and the taxpayer should acquiesce. The Commissioner could not repudiate his action when that value again became a determining factor." *Id.* The other case relied on by the debtor is *Orange Sec. Corp. v. Comm'r*, 131 F.2d 662 (5th Cir. 1942), where the issue was the basis of notes that had been treated as having no value when they were acquired. The Fifth Circuit held that the taxpayer could not later demonstrate that the notes had value after the statute of limitations had expired, reasoning:

> While it is true that income taxes are intended to be settled and paid annually each year standing to itself, and that omissions, mistakes and frauds are generally to be rectified as of the year they occurred, this and other courts have recognized that a taxpayer may not, after taking a position in one year to his advantage and after correction for that year is barred, shift to a contrary position touching the same fact or transaction. When such a fact or transaction is projected in its tax consequences into another year **there is a duty of consistency on both the taxpayer and the Commissioner** with regard to it, whether or not there be present all the technical elements of an estoppel.

*Id.* at 663 (emphasis added) (citations omitted). Although in both cases the Fifth Circuit indicated that the duty of consistency would also apply to the IRS, neither case involved the actual application of the doctrine to the IRS.

On the other hand, the Sixth Circuit has expressly found that the duty of consistency doctrine does not apply to the IRS. In *Temple v. Comm'r*, 62 F. App'x 605 (6th Cir. 2003), the

7

taxpayer transferred most of his interest in properties he owned as well as his income to a series of off-shore trusts. The IRS issued a notice of deficiency for the tax years of 1988 – 1992 and the Tax Court found that the income, even if assigned to the off-shore trusts, was attributed to the taxpayer because he remained in control of the funds. 62 F. App'x at 607. The taxpayer appealed, arguing in part that the IRS was bound by the consistency doctrine because he received a notice from the IRS in 1989 assessing his income tax for 1985. In response, he wrote the IRS that this income had been transferred to one of the trusts and the IRS replied with a handwritten note stating it was closing the case against him. *Id.* at 608. After listing the aforementioned elements to the consistency doctrine, the Sixth Circuit found that "the duty of consistency only applies against the taxpayer and is completely inapplicable here." *Id.* at 609. It went on to state:

> [Even if the consistency doctrine] was extended to apply to the IRS as well, something no court appears to have done so far, it would not work to [the taxpayer]'s advantage here. The IRS has not attempted to change the characterization of the income involved so that, over time, it could extract greater revenues from [the taxpayer] than it would have been entitled to under any consistent treatment of the income. Rather, it at one time acquiesced in [the taxpayer]'s characterization of the royalty income in a manner favorable to [the taxpayer] and therefore harmful to the IRS. Now, with the benefit of more evidence and closer examination, the IRS ceased its acquiescence. The duty of consistency would not bar this, even if it was applicable to the IRS.

*Id.*

It is unclear whether the duty of consistency doctrine applies to the IRS. Even if the duty of consistency doctrine does apply here, summary judgment cannot be granted on that basis because the elements to establish the doctrine are not met. Plaintiff argues that Defendant made inconsistent representations by not asserting an alter ego theory in the Tax Court Litigation and by recognizing Defendant, MDPA, and HLN as separate and distinct in the agreed-upon resolution of that proceeding. However, all that actually occurred in the Tax Court Litigation was the

8

determination of the tax liability of Defendant and each entity.  Defendant took no position regarding corporate form or alter ego liability.

For similar reasons, summary judgment cannot be granted on the basis of Plaintiff's other theories of res judicata, collateral estoppel, and judicial estoppel.  Res judicata applies when three conditions are met:

> 1) [T]he prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) (citing *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)).  The parties settled the Tax Court Litigation, and the orders in the Tax Court were entered by agreement of the parties.  The Tax Court Litigation orders only address the amount of tax owed by each party – the alter ego issue is not addressed.  While it is true that a settlement between parties can form the basis for a finding of res judicata,[2] here it does not appear that the settlement between the parties extended to the alter ego issue – that is to say, the settlements did not address whether parties other than the taxpayer might also be liable for the tax.  Res judicata should not be applied in such a case.

To establish that it is entitled to the application of collateral estoppel, a party must show:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

---

[2] *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013) (stating, with respect to litigation concluded with a settlement agreement, the principles of res judicata are modified, and "the preclusive effect of a judgment based on such an agreement can be no greater than the preclusive effect of the agreement itself.").

9

*In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004). As discussed above, the alter ego issue was not raised in the Tax Court Litigation; thus, the first, second, and third elements required for collateral estoppel are not met.

Finally, "[j]udicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkard v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). The Fourth Circuit has stated:

> Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." The position at issue must be one of fact as opposed to one of law or legal theory. "Second, the prior inconsistent position must have been accepted by the court." Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." This bad faith requirement is the "determinative factor."

*Id.* (internal citations omitted). Plaintiff's motion cannot be granted based on judicial estoppel. Again, Defendant has not taken any position inconsistent with its position in the Tax Court Litigation. Additionally, there is no assertion that Defendant engaged in bad faith or intentionally misled the court. Plaintiff's motion for summary judgment is denied.

2. <u>Defendant's Motion for Summary Judgment</u>

"The initial inquiry in any case involving a federal tax lien is to determine what rights the taxpayer has to the property in question under state law." *OMOA Wireless, S. Der. L. v. United States*, No. 1:06-CV-148, 2010 WL 3199959, at *4 (M.D.N.C. Aug. 12, 2010). "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States,* 528 U.S. 49, 58 (1999). "[I]n order to determine whether a third party is a nominee or alter ego of the taxpayer, the court must determine whether the taxpayer has a legal right in

10

relation to the property under state law." *OMOA Wireless, S. Der. L.*, No. 1:06-CV-148, 2010 WL 3199959, at *4; *see also United States v. Powell*, No. CV 99-224-TUC-RCC, 2001 WL 283808, at *5 (D. Ariz. Feb. 20, 2001), *aff'd,* 31 F. App'x 424 (9th Cir. 2002) ("The IRS looks to state law to determine what qualifies as property to which the lien may attach. *U.S. v. Bess,* 357 U.S. 51, 55 (1958). However, once a federal lien attaches, then federal law controls. *Medaris v. U.S.* 884 F.2d 832, 833 (5th Cir.1989).").

In South Carolina,

> An alter-ego theory requires a showing of total domination and control of one entity by another and inequitable consequences caused thereby. Control may be shown where the subservient entity manifests no separate interest of its own and functions solely to achieve the goals of the dominant entity. However, this theory does not apply in the absence of fraud or misuse of control by the dominant entity which results in some injustice.

*Colleton Cty. Taxpayers Ass'n v. School Dist. of Colleton Cty.,* 371 S.C. 224, 237, 638 S.E.2d 685, 692 (2006) (internal citations omitted). The South Carolina Supreme Court has clarified that, although South Carolina courts often treat "alter ego" and "piercing the corporate veil" interchangeably,[3] those terms are distinct. *Drury Dev. Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 101 n.1 (2008). "Whereas 'alter ego' describes a theory of procedural relief, 'piercing the corporate veil' refers to the relief itself." *Id.*

South Carolina courts have established a two-prong test for a piercing the corporate veil analysis. *Hunting v. Elders*, 359 S.C. 217, 224 (Ct. App. 2004). "'The first part of the test, an eight-factor analysis, looks to observance of the corporate formalities by the dominant shareholders. The second part requires that there be an element of injustice or fundamental

---

[3] One commentator, in discussing the primary three variants within the "piercing the corporate veil" jurisprudence (the instrumentality doctrine, the alter ego doctrine, and the identity doctrine), has stated, "On close scrutiny, none of the three above variants of 'piercing the veil' offers precision or a characteristic that distinguishes it from the other two variants. In practice, they are virtually indistinguishable from one another, and the outcome of the cases does not appear to depend on which standard is applied." 1 Treatise on the Law of Corporations § 7:8 (3d).

11

unfairness if the acts of the corporation be not regarded as the acts of the individuals.'" *Id.* (quoting *Sturkie v. Sifly*, 280 S.C. 453, 457-58 (Ct. App. 1984)). The eight factors of the first prong are as follows:

> (1) Whether the corporation was grossly undercapitalized;
> (2) Failure to observe corporate formalities;
> (3) Non-payment of dividends;
> (4) Insolvency of the debtor corporation at the time;
> (5) Siphoning of funds of the corporation by the dominant stockholder;
> (6) Non-functioning of other officers or other directors;
> (7) Absence of corporate records; and
> (8) The fact that the corporation was merely a façade for the operations of the dominant stockholder.

*Hunting*, 359 S.C. at 224 (quoting *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 192 (Ct. App. 1995)).[4] These factors are useful for the Court in making an alter ego determination.

The alter ego determination is fact intensive. There are numerous genuine issues of material fact in this case, which necessitates denial of Defendant's motion. The disputes of fact include, among others, whether corporate formalities, such as annual board meetings, were observed,[5] whether officers or directors other than Plaintiff were just officers and directors by name or were actually acting in their roles,[6] and whether the corporations were façades for Plaintiff's operations.[7] The voluminous evidence submitted by Plaintiff and Defendant in connection with their motions, without the context of a trial, do not resolve the genuine issues of material fact in either party's favor. Defendant's motion must be denied.

---

[4] Notably, these are the identical factors listed in *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976), the case on which Defendant relies. Thus, regardless of whether federal or state law is applied, the result here, denial of Defendant's summary judgment motion, is the same.
[5] *See* Joint Stipulation, pg. 49, ¶ 7; pg. 53, ¶ 16, 18; pg. 53, ¶ 16; pg. 54, ¶ 21; pg. 58, ¶ 28.
[6] *See* Joint Stipulation, pg. 17, ¶ 2; pg. 19, ¶ 4; pg. 53, ¶ 16; pg. 62, ¶ 48, 50.
[7] *See id.*, pg. 18, 19 ¶ 3; pg. 48, ¶ 1, 3.

V. Conclusion

For the reasons set forth above, both motions for summary judgment are denied. The parties should file their joint pre-trial stipulation on or before September 1, 2016. A pre-trial conference will be held September 20, 2016 at 9:00 a.m. in Charleston.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/30/2016**



Entered: 07/01/2016

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina